## CIRCUIT COURT OF FAUQUIER COUNTY

Belinda R. McCleary

v.

Joseph R. Keesling et al.

Case No. (Law) CL90–90

Emerson E. Smith, Jr.

v.

Joseph R. Keesling et al.

Case No. (Law) CL90–89

October 24, 1990

BY JUDGE RAYNER V. SNEAD

Emerson E. Smith, Jr., the principal of Coleman Elementary School in Marshall, Virginia, and Belinda R. McCleary have filed Motions for Judgment claiming that they have been defamed and libeled by defendant, Arundel Newspapers. Plaintiffs claim specifically that:

> The published letter stated or implied that (1) the plaintiff authorized and permitted a classroom program with children "meditating, trying to go into a trance, and achieve an out of body experience"; (2) that the program was "secular humanistic training and indoctrination"; (3) that the program was perhaps "a preliminary step in the next phase of sex education"; (4) that the program was "garbage"; (5) that the plaintiff was "improvisational and extemporaneous in wasting our tax money"; (6) that the plaintiff had a drug

problem; and (7) that the plaintiff supported teaching "feculence" to the children.

The defendant, Arundel Newspapers, through counsel, filed a general demurrer to the Motions for Judgment giving four separate arguments why the pleading is insufficient as a matter of law:

(1) the alleged speech giving rise to the defamation and insulting words causes of action is not defamatory;

(2) the alleged speech giving rise to the defamation and insulting words causes of action is not "of and concerning" the plaintiffs;

(3) as an expression of opinion and fair comment, the purported speech which plaintiffs ascribe to defendants is not actionable as a matter of law;

(4) as rhetoric and hyperbole, the First Amendment of the United States Constitution and Article I, §§ 12 and 16, of the Virginia Constitution fully protect the alleged speech from plaintiffs' claims for defamation.

Three of the defendant's arguments relate to the actionable character of the words published by the defendant. First are the words defamatory (argument 1), second are the words constitutionally protected as statements of opinion (argument 3), and third would a reasonable reader believe the statements made concerning the plaintiffs to be true (argument 4).

Also explicit from the understanding of these arguments is the proposition "that a statement on matters of public concern must be provable as false before there can be liability under the state defamation law, at least in situations like the present where a media defendant is involved." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20, 110 S. Ct. 2695, 2706 (1990).

Since plaintiffs' allegations # 2, # 3, # 4, # 5, and # 7 are subjective statements that cannot be verified as either true or false, they can be immediately eliminated as not actionable. Plaintiffs' allegations # 1 and # 6, however, can be verified as true or false and therefore pass the minimum threshold requirement.

Having passed this minimum requirement, two rules of construction need to be applied to the two remaining allegations to determine if they are capable of a defamatory meaning. First, the allegedly defamatory words are to be "taken in their plain and natural meaning" and interpreted "as other people would understand them." *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7, 82 S.E.2d 588, 591–92 (1954). Second, the words themselves must be viewed in

context with "all the surrounding facts and circumstances . . . taken into consideration and the whole case . . . looked at in the light of its own particular facts." *Zayre of Virginia, Inc. v. Gowdy*, 207 Va. 47, 50, 147 S.E.2d 710, 713 (1966).

If the alleged defamatory language is plain, unambiguous, and susceptible of but one interpretation, then it becomes a question of law what meaning is ascribed to it. If the words tend to "diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or . . . excite adverse, derogatory or unpleasant feelings or opinions against him," then the statement is defamatory. *Fuller v. Edwards*, 180 Va. 191, 22 S.E.2d 26 (1942). If the words do not tend to have that effect, then as a matter of law, the statement is not defamatory.

When the statement can have more than one interpretation, one defamatory and one not, because the words are either ambiguous or the surrounding facts change their plain meaning, it becomes a question for the jury to decide what meaning was understood by the recipient. *Tavoulareas v. Piro*, 817 F.2d 762, 779–80 (D.C. Cir.), cert. denied, 484 U.S. 870, 108 S. Ct. 200 (1987).

When viewing the alleged defamatory statements under the above criteria, it is the opinion of the court that the two statements are susceptible to both a defamatory interpretation and an innocent interpretation. Plaintiffs have submitted a plausible interpretation of the published words, and that interpretation is defamatory. Alternatively, given the ambiguous nature of words such as meditating, trance, and out-of-body experience and also the entire context of the published article, the actual statements might be viewed as just over-exuberant criticism of the educational system and this course in particular.

With such varying interpretations, it is a question for the jury to decide which meaning was understood by the reader. "A demurrer is a proper procedure to test the actionable character of the words, and it will be sustained when, and only when, the court can affirmatively say that the publication is incapable of any reasonable construction which will render the words defamatory." 53 C.J.S., *Libel and Slander*, § 182 (1948). In this instance, the court cannot say that the actual published words, that plaintiffs have used to formulate allegations # 1 and # 6, are not defamatory. Therefore, defendant's first argument must be overruled.

Defendant's argument concerning opinion must also be overruled since the court cannot unequivocally state that plaintiffs' allegations

# 1 and # 6 are the type of pure expression protected by the United States and Virginia Constitution. In the recent United States Supreme Court decision of *Milkovich v. Lorain Journal Co.*, the court determined that the U.S. Constitution did not necessarily protect all opinions, only those opinions that do not state or imply defamatory facts about an individual. 110 S. Ct. 2695, 2706.

Although the Supreme Court of Virginia in *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985), found that pure expressions of opinion were protected not only by the United States Constitution, but by the Virginia State Constitution as well, that court decision gave very little guidance for determining when statements were to be considered protected opinion. In this Virginia Supreme Court case, the court did not adopt the four factor test first articulated in *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984), cert. denied, 471 U.S. 1127, 105 S. Ct. 2662 (1985), and recently the *Milkovich v. Lorain Journal Co.* case rejected such a test, 110 S. Ct. 2615, 2706. Therefore, this court will follow the recent United States Supreme Court decision and rule that opinions are only protected as a matter of law when they are either unverifiable subjective statements or when they do not state or imply defamatory statements of fact about an individual. Since it has already been determined that two of plaintiffs' allegations can be interpreted as defamatory facts, this court believes that the jury should decide if they were understood as such.

Additionally, the defendant's argument concerning rhetoric and hyperbole must be overruled as to plaintiffs' allegations # 1 and # 6. While it is true that there is recognized constitutional limits on the type of speech which may be the subject of state defamation actions, it is not true that this is always a question of law for the court to decide. Only when those receiving the communication cannot reasonably believe the statements to be true, can it be decided as a matter of law that the words are not actionable. Otherwise, it is a question of fact for the jury to determine if the statements were actually understood as true. *Coor v. Lewis*, 94 Va. 24, 26 S.E. 385 (1896). This court cannot say that the plaintiffs' allegations # 1 and # 6 could not be reasonably understood as plaintiffs have alleged and that a reasonable reader could not understand them to be true.

Finally, the defendant states that "the alleged speech giving rise to the defamation and insulting words causes of action is not 'of and concerning' the plaintiff." Just as defamatory words, the question as to whether the publication refers to plaintiffs can be a question of

law or fact. "If there is no ambiguity in the language used, the question whether the plaintiff was the person defamed is one of law." 53 C.J.S., *Libel and Slander*, § 224 (1948). "If there is doubt the question is one of fact." 53 C.J.S., *Libel and Slander*, § 224 (1948).

Since it has been determined that two statements published by the defendant are capable of a defamatory meaning, if these statements can possibly refer to the plaintiff's, then this argument by defendant must also be overruled. The one sentence that refers to plaintiffs is as follows:

> I wonder if this garbage is sanctioned by the school board and administration or if Dr. Smith, Colman's principal, and Mrs. McCleary, the choir teacher, are improvisational and extemporaneous in wasting our tax money.

Clearly this statement referred to other than just the plaintiffs, but it does mention the plaintiffs as possible individuals who might be responsible for the classroom experience that the defendant is complaining of. This statement when connected with plaintiffs' allegations # 1 and # 6 could relate the allegedly defamatory statements to the plaintiffs. Since it is ambiguous as to whether the two previously mentioned statements were directed towards the plaintiffs, it becomes a question of fact for the jury to determine, and the defendant's argument must be overruled.

For the reasons stated, this court concludes that the defendant's demurrer to the plaintiffs' Motions for Judgment is overruled as to plaintiffs' allegations # 1 and # 6 and sustained as to plaintiffs' allegations # 2, # 3, # 4, # 5, and # 7.

December 1, 1992

## By Judge James H. Chamblin

These defamation cases came before the Court on November 13, 1992, on the Motion for Summary Judgment and Motion in Limine filed by the defendant, Arundel Newspapers. During argument on the Motion for Summary Judgment, it became apparent that this Court must initially decide the procedure to be used in resolving the issues raised by the motion. The Court took the procedural issue, as well as all matters that could be decided without further hearing depending on the decision of the procedural issue, under advisement.

For the reasons hereinafter set forth, the Court finds that the appropriate standard of fault to be applied in these cases is that of

malice under *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 8 S. Ct. 710 (1964), because as required by *Gazette, Inc.* v. *Harris*, 229 Va. 1 (1985), as a matter of law the alleged defamatory statement does not make substantial danger to reputation apparent.

In these cases the plaintiffs, a principal and a teacher at an elementary school in Fauquier County are suing for defamation arising out of a letter to the editor of the *Fauquier Times-Democrat* written by the defendant, Joseph R. Keesling. The newspaper is published by Arundel, and the letter was published in October 1989. A copy of the letter is attached hereto as Exhibit A. The motions for judgment allege seven specific defamatory statements, but another judge of this Court has previously ruled on demurrer that only two are actionable:

(1) The plaintiffs authorized and permitted a classroom program with children "meditating, trying to go into a trance, and achieve an out of body experience"; and

(2) The plaintiffs had a drug problem.

At argument on November 13, 1992, counsel agreed that the statement as to a drug problem was the most important.

In his memorandum opinion of October 24, 1990, Judge Snead ruled that the two statements are susceptible to both a defamatory interpretation and an innocent interpretation.

Under *Gazette* when an action is brought by a private individual (there is no contention here that the plaintiffs are public figures) for defamation, a negligence standard applies only where the defamatory statement makes substantial danger to reputation apparent. *Gazette* requires the trial court to make such determination as a matter of law. If no substantial danger to reputation is apparent from the statement at issue, *New York Times* malice must be established before the plaintiff can recover.

Although *Gazette* does not state precisely how the trial court should go about making the determination, the Supreme Court did state in *Gazette* that the determination "resembles the determination traditionally made by the court on the question whether a statement is libelous *per se*. A trial judge must decide, viewing the circumstances objectively, whether a reasonable and prudent editor should have anticipated that the words used contained an imputation necessarily harmful to reputation." 229 Va. at 22.

What must be apparent from the statement is not just *a* danger to reputation but a *substantial* danger to reputation. As to the "meditating" statements Judge Snead has already ruled that the words used

are of an ambiguous nature. There is no statement that the plaintiffs have a drug problem. Keesling merely "wonders" and asks a question which might be interpreted as an indirect statement that the plaintiffs have a drug problem. I am of the opinion that the words used by Keesling do not directly and unambiguously state that the plaintiffs have caused choir students to do anything that would defame them or that the plaintiffs have a drug problem. Hence, using an objective standard, I feel that any harmful potential of the words used, i.e. a substantial danger to the reputation of the plaintiffs, would not have been apparent to a reasonable and prudent editor exercising ordinary care.

There is no need to take any evidence on this issue. It can be decided simply by the Court reading the letter at issue. All the other circumstances surrounding the letter will be considered in deciding whether or not the statement is defamatory under the *New York Times* standard.

The Motion for Summary Judgment is, therefore, granted as to the appropriate standard of fault to be applied in these cases, but is denied otherwise.